UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| LEON THOMAS, | ) |
| | ) |
| Petitioner, | ) Civil Action No. 6:17-cv-00274-GFVT |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| J. RAY ORMOND, Warden, | ) **&** |
| | ) **ORDER** |
| Respondent. | ) |
| | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Federal inmate and *pro se* petitioner Leon Thomas initially earned good time credit for his positive behavior while incarcerated. He later lost that good time credit as a result of an October 2016 incident with prison staff. Before sanctioning Thomas with this loss of good time credit, the prison held a disciplinary hearing. However, prison staff failed to review security camera footage of the underlying incident as part of the hearing. Thomas maintains his due process rights were violated by that failure. For the reasons below, the Court disagrees, and Thomas's 28 U.S.C. § 2241 petition for a writ of habeas corpus is **DENIED**.

**I**

Leon Thomas has almost finished serving a 235 month federal sentence for bartering a stolen firearm in violation of 18 U.S.C. § 922(j) and for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). *See United States v. Leon Thomas*, No. 2:99-cr-00191-JTM (N.D. Ind. 1999); [*see also* R. 16 at 1 (indicating Thomas's current projected release date is October 2, 2018).] While serving this lengthy sentence, Thomas has spent time at a number of

different facilities.[1]  In the fall of 2016, Thomas was incarcerated at the Federal Correctional Complex in Forest City, Arkansas ("FCC Forest City").

During his time at FCC Forest City, Thomas was disciplined for attempting to assault prison staff, and the sanctions imposed involved a loss of his good time credit.  The relevant incident occurred after Thomas was informed by prison staff that he was to receive a cellmate in his assigned cell.  [R. 1-1 at 1; R. 16 at 2.]  The parties dispute what happened next.  Thomas contends that he was not required to have a cellmate because of his medical condition and that he asked prison staff to review documents stating such.  [R. 1-1 at 1–2.]  When the staff refused, he banged on the cell door to get the attention of others but accidentally missed and hit the window, causing it to shatter.  *Id.* at 2.  Thomas claims he then tried to throw his coffee cup out of the way at a wall, not directly at a staff member.  *Id.* at 2, 5.  In sum, he claims he never intended to assault anyone and that the incident reports drafted by prison staff were false.  *Id.* at 2–3.

The respondent, on the other hand, states that Thomas became verbally abusive toward prison staff and that he actually moved toward a staff member in his wheelchair to throw a cup of coffee at her.  R. 16 at 3.  The respondent also claims Thomas used a footplate rigging from his wheelchair to break the window of his cell door, *see id.* at n.1, and that he subsequently threw that footplate rigging at a different staff member.  *Id.* at 3.

Regardless of the accuracy of either side of the story, the gravamen of Thomas's petition is that prison staff wrongfully failed to review security camera footage of the incident during the disciplinary hearings.  [*See* R. 1 at 2 (claiming the regional director erred by not reviewing the cameras, thus violating his due process rights).]  Thomas ultimately claims he would not have

---

[1] Although Thomas is currently incarcerated at the United States Penitentiary – Hazleton in Bruceton Mills, West Virginia [*see* R. 19], at the time Thomas filed the present action, he was incarcerated at the United States Penitentiary – McCreary in Pine Knot, Kentucky.  [R. 1 at 1.]  His petition is therefore properly before this Court.  *See Griffin v. Ebbert*, 751 F.3d 288, 290-91 (5th Cir. 2014) (compiling cases).

been held liable for attempting to assault prison staff—and, in turn, would not have lost his good time credit—if the footage had been reviewed as he requested. [R. 1; R. 1-1.] The Court now considers his argument, as well as the Warden's response, on the merits.

## II

### A

The United States Supreme Court has articulated certain minimum procedures that prison officials must follow before taking away an inmate's good time credit during disciplinary proceedings. *See Sandin v. Conner,* 515 U.S. 472, 477–78 (1995); *Wolff v. McDonnell*, 418 U.S. 539 (1974). When a prisoner's good time credit is on the table as a sanction, the prisoner is entitled to advanced, written notice of the charges; the opportunity to call witnesses and present other evidence in his or her defense; and a written decision explaining the grounds used to determine the sanctions imposed. *Wolff*, 418 U.S. at 563–66.

Furthermore, a disciplinary board's decision to revoke good time credit must be "supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The "some evidence" threshold is a low one. This standard of review does not require the Court to examine the entire record, to weigh evidence independently, or to assess the credibility of witnesses. *Id.* at 455–56. Instead, "the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (emphasis added)*; see also Higgs v. Bland,* 888 F.2d 443, 448 (6th Cir. 1989).

### B

Despite the FCC Forest City hearing officer's failure to review the video footage purportedly capturing the incident between Thomas and prison staff, the record in this case indicates that Thomas's due process rights were not violated. All of the procedural requirements

set forth in *Wolff v. McDonnell* were satisfied, and the decision to revoke Thomas's good time credit was supported by the requisite evidence.

As mentioned above, the prison was required to provide Thomas with written notice of the hearing at least twenty-four hours in advance, an opportunity to present evidence in his defense, and a written decision explaining the reasoning behind the sanctions before taking away his good time credit. *See Wolff*, 418 U.S. at 563-66; *Blevins v. Lamanna*, 23 F. App'x 216, 217 (6th Cir. 2001). Thomas has not argued that any of these due process requirements were violated in his disciplinary proceeding [*see* R. 1; R. 1-1], and, in fact, the record shows that all three were satisfied. Thomas was provided with written incident reports on October 5, 2016, and he was advised of his rights and was given notice of the hearing on the next day. The disciplinary hearing was then held on October 12, 2016, significantly more than twenty-four hours later. [R. 16-1 at 3–4; R. 16-3 at 1–5; R. 16-4 at 1–4.] At the hearing, Thomas was offered the assistance of a staff representative and allowed to present both documentary evidence and witnesses. While Thomas refused the aid of a staff representative and did not present witnesses, he did make a statement in his defense. [R. 16-1 at 4–5; R. 16-3 at 5; R. 16-4 at 4.] Finally, Thomas was presented with a written explanation of the disciplinary hearing officer's decision and the evidence relied upon therein. [R. 16-1 at 6; R. 16-3 at 5–8; R. 16-4 at 4–7.]

As for the video footage that Thomas suggests would exonerate him, the record demonstrates that Thomas never asked the hearing officer nor anyone else to review the video footage at the time of his hearing. [*See* R. 16-1; R. 16-3; R. 16-4.] But even if Thomas had, district courts have repeatedly found that a prison's failure to review video footage as part of a disciplinary proceeding does not constitute a due process violation when the "some evidence" standard is otherwise satisfied. *See, e.g.*, *Harvey v. Wilson*, No. 6:10-cv-235-GFVT, 2011 WL

1740141 (E.D. Ky. May 5, 2011); *Davis v. Zuercher*, No. 7:08-cv-207-KKC, 2009 WL 585807 (E.D. Ky. March 6, 2009) (compiling cases).

Here, the "some evidence" threshold was satisfied without the video footage. The disciplinary hearing officer relied on memoranda prepared by several different staff members, photographic evidence, email correspondence, and injury assessments. [*See* R. 16-3 at 5–7; R. 16-4 at 4–6.] The relevant question for the Court is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board," *see Hill*, 472 U.S. at 455–56, and the evidence relied upon by the hearing officer certainly supports the hearing officer's final conclusion. Thus, the hearing officer's failure to rely upon video footage of the incident involving Thomas does not rise to the level of a due process violation.

Finally, to the extent Thomas attempts to argue that the prison staff's failure to review the video footage violates Federal Bureau of Prisons ("BOP") policy, Thomas has failed to articulate which BOP policies or program statements were actually violated. [*See* R. 1-1 at 6–7.] And, in any event, an agency's alleged failure to adhere to its own policies does not on its own state a due process claim. *See, e.g.*, *Bonner v. Federal Bureau of Prisons,* 196 F. App'x 447, 448 (8th Cir. 2006) ("[A] violation of prison regulations in itself does not give rise to a constitutional violation."). There is simply no requirement that the video evidence be reviewed before Thomas's good time credit was taken away, particularly in light of the other extensive evidence relied upon by the disciplinary hearing officer.

### III

Accordingly, it is hereby **ORDERED** as follows:

1. Thomas's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241 [**R. 1**] is **DENIED**;

2. This action is **STRICKEN** from the Court's active docket; and

3. Judgment shall be entered contemporaneously herewith.

This the 16th day of August, 2018.

Gregory F. Van Tatenhove
United States District Judge